United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAWNIA SIMMONS,

          Plaintiff,

    v.

MARRIOT COURT YARD,

          Defendant.

Case No.  19-cv-04431-PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 55

Defendant Courtyard Management Corporation's ("Marriott" or "defendant")[1] motion for summary judgment came on for hearing before this court on December 2, 2021.  Plaintiff, proceeding pro se, appeared on her own behalf.  Defendant appeared through its counsel, Monte K. Grix and Alia L. Chaib.  Having read the papers filed by the parties[2] and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the following reasons.

## I.    BACKGROUND

Courtyard Management Corporation is a subsidiary of Marriott International, Inc. ("Marriott") and operates the Courtyard by Marriott brand of hotels, which includes the Courtyard hotel in San Ramon, California (the "Courtyard San Ramon").  Webb Decl. ¶ 1 (Dkt. 55-1 at 2).  Plaintiff Dawnia Simmons was hired by Marriott as a Housekeeping Aide

---

[1] Defendant is erroneously named in the complaint as "Marriot Court Yard."

[2] Plaintiff filed an untimely opposition the day before the hearing.  Nonetheless, defendant had an opportunity to reply to it at the hearing and the court has considered it here.

at the Courtyard San Ramon on September 5, 2017.  Webb Decl. ¶ 14 (Dkt. 55-1 at 5).

### A.      Plaintiff's Resignation

Plaintiff took a leave of absence from early February 2018 to March 4, 2018.
DeFinney Decl. ¶ 3 (Dkt. 55-2 at 2).  Upon returning to the workplace on March 4, 2018,
plaintiff resigned by delivering a brief, handwritten resignation letter to a housekeeping
supervisor and then immediately cleared out her locker and left the property.  Grix Decl.
¶¶ 2-3, Ex. 1-2; Simmons Depo. Vol. 1, 40:16-22, 48:2-10, 56:17-57:4, Vol. 2, 234:24-
235:13, Ex. 3 (Dkt. 55-4 at 2, 7-8, 10-11, 71-72, 105).  Plaintiff did not speak to the
General Manager, Lisa DeFinney, regarding her resignation, and plaintiff does not know if
the housekeeping supervisor informed DeFinney regarding plaintiff's resignation.
Simmons Depo. Vol. 1, 56:17-24, 58:10-16 (Dkt. 55-4 at 10, 12); DeFinney Decl. ¶ 3 (Dkt.
55-2 at 2.)

### B.      Plaintiff's June 2018 Post-Resignation Complaint to Marriott and Resulting Investigation

On June 8, 2018, three months after her resignation, plaintiff lodged an internal
complaint with Marriott claiming that she had applied for job opportunities within the
company but believed her previous general manager had "black-balled" her because she
is African American.  Webb Decl. ¶¶ 5, 6, 9, Ex. 2 (Dkt. 55-1 at 3-4, 12-15).  Plaintiff also
alleged she did not receive a pay increase that she believed she was entitled to receive
after 90 days of employment.  Id.; Simmons Depo., Vol. 1, 55:4-7 (Dkt. 55-4 at 9).

Julius Webb, Area Manager of Associate Relations, who oversaw human
resources issues at the Courtyard San Ramon, received this complaint and investigated
plaintiff's concerns, which included a review of plaintiff's personnel records and also
included several conversations with plaintiff and DeFinney.  Webb Decl. ¶¶ 5-12, Ex. 2
(Dkt. 55-1 at 3-5, 12-15).  Marriott discovered that, while the company did not provide
automatic 90-day pay increases as plaintiff had alleged, an hourly rate increase of $1.50
had been approved for all associates in plaintiff's job position in January 2018.  DeFinney
Decl., ¶¶ 6, 7, Ex. 4 (Dkt. 55-2 at 3-4, 21-22); Webb Decl. ¶¶ 5, 9, Ex. 2; (Dkt. 55-1 at 3-5,

United States District Court
Northern District of California

1  12-15).  Plaintiff had not received this rate increase due to a clerical error, so Marriott

2  issued payment to plaintiff in the amount of $98.70 (pre-tax) reflecting the rate increase

3  and $3,240 in "waiting time penalties" under section 203 of the California Labor Code

4  because plaintiff was not paid all wages owed at the time of her resignation.  Id.  Plaintiff

5  picked up her checks at the Courtyard San Ramon in person and spoke with DeFinney,

6  who apologized for the error.  Simmons Depo., Vol. 1, 93:3-12; Vol. 2, 225:5-16 (Dkt. 55-

7  4 at 22; 65).

8      Webb also investigated the circumstances surrounding plaintiff's separation from

9  Marriott.  Webb Decl. ¶¶ 5-12, Exs. 2, 3 (Dkt. 55-1 at 3-5, 11-18).  Despite plaintiff's

10  statement that she had resigned from the property, Webb discovered that internal

11  documents reflected that plaintiff had been involuntarily terminated.  Webb Decl. ¶ 7 (Dkt.

12  55-1 at 4).  Webb and DeFinney together determined that DeFinney had inadvertently

13  confused plaintiff with a coworker terminated for facing similar attendance challenges,

14  leaving the company's records incorrect.   Webb Decl. ¶ 12 (Dkt. 55-1 at 4-5); DeFinney

15  Decl. ¶¶ 9-11 (Dkt. 55-2 at 3-5).  In consultation with Webb, DeFinney corrected the

16  internal separation code to reflect a voluntary resignation, and it was updated in Marriott's

17  records on July 16, 2018.  Webb Decl. ¶ 12, Ex. 3 (Dkt. 55-1 at 4-5, 17-18); DeFinney

18  Decl. ¶ 9, Ex. 7 (Dkt. 55-2 at 5, 28-29).  Webb informed plaintiff of the inadvertent error

19  and advised that her separation code had been corrected.  Webb Decl. ¶ 12 (Dkt. 55-1 at

20  4-5).

21      Webb was unable to substantiate plaintiff's concerns that she had been "black

22  balled" by DeFinney, and DeFinney denied communicating with prospective employers

23  about plaintiff's employment.  Webb Decl. ¶ 13 (Dkt. 55-1 at 5).  Webb closed his

24  investigation file on July 23, 2018.  Webb Decl. ¶ 9, Ex. 2 (Dkt. 55-1 at 4, 12-15).

25      **C.    Alleged Defamatory Statements**

26      Plaintiff limits her sole claim of defamation to alleged defamatory statements made

27  by Marriott to prospective hiring managers.  Dkt. 1.  Plaintiff testified that following her

28  resignation from Marriott, she applied for employment with at least nine hotels and, from

3

these, had seven interviews at various hotels, including interviews at other Marriott-brand hotels. Simmons Depo., Vol. 2, 198:18-202:15 (Dkt. 55-4 at 43-47). Plaintiff believes that she did not receive an offer for any of these positions because DeFinney made the following untrue statements about her to hiring managers at prospective employers: (1) she was "fired for misconduct," (2) she is "a troublemaker," (3) she is "hard to work with," and (4) she had a criminal background. Simmons Depo, Vol. 1, 96:14-17 (Dkt. 55-4 at 25-26) Vol. 2, 230:14- 231:4; 233:6-16 (Dkt. 55-4 at 67-68, 70). Plaintiff did not remember the dates of these purported interviews, and she could not identify any event after July 14, 2018 (the date she received her checks for the retroactive pay and the waiting time penalties) where a hiring manager claimed she was terminated from Marriott. Simmons Depo., Vol. 2, 223:24-224:17, 225:5-9, 226:3-8 (Dkt. 55-4 at 63-64, 65, 66); DeFinney Decl. ¶ 7, Ex. 4 (Dkt. 55-2 at 21-22).

Plaintiff did not proffer any documentary evidence confirming any interviews at any time, but rather has only provided emails that appear to confirm that she had applied at certain hotels in 2018 or 2019. Simmons Depo., Vol. 2, 195:17-197:15, 218:9-219:16, Exs. 1, 2 (Dkt. 55-4 at 40-42, 61-62, 77-104). Plaintiff could not provide the names of any of the hiring managers who relayed the allegedly defamatory statements about her. Simmons Depo., Vol. 2, 202:13-215:15 (Dkt. 55-4 at 47-60). Plaintiff admitted that she does not "have any knowledge of anything that [DeFinney] said about me," but she believes DeFinney made comments to potential employers because she was the General Manager and she had access to personnel records. Simmons Depo., Vol. 2, 233:19-234:16 (Dkt. 55-4 at 70-71). Plaintiff additionally believes that DeFinney disclosed to a hiring manager that she has a criminal background. Simmons Depo., Vol. 2, 230:14-232:16 (Dkt. 55-4 at 67-69). Plaintiff has no knowledge of why DeFinney may have made these alleged statements, nor does she know if the alleged statements were made with any malintent. Simmons Depo., Vol. 1, 122:17-123:7, 123:16-22 (Dkt. 55-4 at 29-30). DeFinney declares that she did not speak to any hiring managers at other hotels about plaintiff's performance or the circumstances surrounding her separation from Marriott.

1   DeFinney Decl. ¶¶ 4-6 (Dkt. 55-2 at 3); Webb Decl. ¶¶ 10, 13, Ex. 2 (Dkt. 55-1 at 4-5, 12-

2   15); Said Decl. ¶ 2, Ex. 1 (Dkt. 55-3 at 2, 4-5).

3   ### D.   Procedural History

4   On August 1, 2019, plaintiff filed the complaint in this action.  Dkt. 1.  The

5   complaint alleged three causes of action: (1) defamation of character; (2) retaliation; and

6   (3) discrimination.  Dkt. 1.  The court granted defendant's motion to dismiss the second

7   and third claims, but the court denied the motion with regard to the first claim, leaving the

8   claim for defamation of character remaining.  Dkt. 38.  Plaintiff did not file an amended

9   complaint.  Defendant filed the instant motion on October 28, 2021, after the parties

10  engaged in discovery.  Dkt. 55.  Although plaintiff filed a late response to defendant's

11  motion (Dkt. 59), her brief was still reviewed and is considered an opposition brief by the

12  court.

13  ## II.   DISCUSSION

14  ### A.   Legal Standard

15  A party may move for summary judgment on a "claim or defense" or "part of . . . a

16  claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there

17  is no genuine dispute as to any material fact and the moving party is entitled to judgment

18  as a matter of law.  Id.

19  A party seeking summary judgment bears the initial burden of informing the court

20  of the basis for its motion, and of identifying those portions of the pleadings and discovery

21  responses that demonstrate the absence of a genuine issue of material fact.  Celotex

22  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the

23  outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

24  dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

25  jury to return a verdict for the nonmoving party.  Id.

26  Where the moving party will have the burden of proof at trial, it must affirmatively

27  demonstrate that no reasonable trier of fact could find other than for the moving party.

28  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue

United States District Court
Northern District of California

where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material—the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).  However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

While allegations from a pro se litigant are to be liberally construed, see Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), the Ninth Circuit has also held that "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir. 1986) (holding that

the district court had no duty to advise a non-prisoner pro se litigant of his obligation to file an opposition to the defendant's motion for summary judgment and submit admissible evidence).  Where, as here, the "litigant . . . chooses himself as a legal representative," the Ninth Circuit has held that plaintiff "should be treated no different."  Id. at 1365 ("it is not for the trial court to inject itself into the adversary process on behalf of on class of litigant" because "[d]oing so necessarily implicates the court's impartiality and discriminates against opposing parties who do have counsel.").

### B.   Evidentiary Considerations

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  To be admissible, a document must be authentic, meaning there must be "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Certain documents are self-authenticating—that is, "[e]xtrinsic evidence of authenticity . . . is not required."  Fed. R. Evid. 902.  The Ninth Circuit has repeatedly held that "unauthenticated documents cannot be considered in a motion for summary judgment."  Orr, 285 F.3d at 773.

Hearsay evidence similarly may not be considered on summary judgment if it does not fall under a hearsay exception.  Orr, 285 F.3d 778.  Hearsay is a "statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).

Here, the exhibits of documentary evidence attached to plaintiff's opposition brief are all inadmissible.  The exhibits have not been properly authenticated.  There is no direct statement anywhere identifying the author of the exhibits or indicating the author and/or declarant's belief that the exhibits are true and correct copies of the exhibits.  Orr, 285 F.3d at 773 (documents that lack foundation inadmissible).  There is insufficient

United States District Court
Northern District of California

1   support for a finding that the items are what plaintiff says they are, and none of the

2   documents are self-authenticating.

3        Further, plaintiff's opposition to defendant's motion relies in substantial part on

4   hearsay.  Plaintiff alleges that defendant defamed her by making false statements about

5   her to hiring managers at other hotels.  Dkt. 1 at 5.  The evidence supporting such

6   allegations is plaintiff's deposition testimony describing statements made to her by

7   unnamed hiring managers, but the description of these out-of-court statements

8   constitutes inadmissible hearsay.  Plaintiff only speculates that DeFinney had substantive

9   conversations about plaintiff with hiring managers after her resignation.  Dkt. 55-4 at 25-

10  28.  Plaintiff additionally speculates that DeFinney disclosed to a hiring manager that she

11  has a criminal background.  Dkt. 55-4 at 67-69.  The out-of-court statements by unnamed

12  hiring managers amount to hearsay and cannot support plaintiff's remaining claim for

13  defamation because they do not fall within an evidentiary exception to the hearsay rule.

14       Given these evidentiary determinations, including the lack of authentication of the

15  exhibits offered by plaintiff and the hearsay nature of the statements, plaintiff fails to offer

16  any admissible evidence contesting defendant's motion.  The merits of defendant's

17  motion for summary judgment are considered below.

18       **C.    Analysis**

19       Marriott moves for judgment on multiple fronts.  The company argues that

20  plaintiff's claim is time-barred and that plaintiff fails to present evidence that DeFinnney or

21  other staff made any statements about plaintiff to any prospective employers.  But even if

22  Marriott made any such statements to prospective employers, it says, the statements did

23  not constitute defamation where they were either (1) true (as in the case of plaintiff's

24  criminal history), (2) opinion (as in the alleged descriptions of plaintiff's work

25  performance), or (3) privileged (as are communications regarding employer-employee

26  relationships made without malice to potential employers).  The court need not reach

27  these considerations regarding the contents of any alleged statements because plaintiff's

28  claim is time-barred and there exists no admissible evidence in the record of any

8

publication.

### 1. Statute of Limitations

"[T]he statute of limitations for defamation . . . requires that an action be filed within one year of accrual of the cause of action." <u>Shively v. Bozanich</u>, 31 Cal. 4th 1230, 1246-47 (2003); <u>see also</u> Cal. Code Civ. Proc. § 340(c). "[A] cause of action for defamation accrues at the time the defamatory statement is 'published.'" <u>Id.</u> at 1247. "[T]he general rule is that publication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed." <u>Id.</u> Under the "discovery" exception to the general rule, the defamation claim accrues when the plaintiff discovered, or should have discovered, a factual basis for her defamation claim. <u>Id.</u> at 1248.

Plaintiff does not identify any instances of allegedly defamatory statements to hiring managers at prospective hotels following her receipt of her pay increase in July 2018. Rather, the rejection emails plaintiff received related to prospective jobs were dated either March 5 or March 12, 2018. Dkt. 55-4 at 77-79. Marriott's investigation into plaintiff's post-resignation complaint was concluded no later than July 23, 2018, when Webb closed his investigation file. Dkt. 55-1 at 4, 12. This lawsuit was not filed until August 1, 2019, more than one year after any alleged statements about plaintiff. Dkt. 1. Thus, her defamation claim is barred by the one-year statute of limitations and summary judgment is granted to defendant as a matter of law on this basis. Even if plaintiff's claims were not barred by the statute of limitations, however, plaintiff's claims additionally fall short because she fails to submit admissible evidence that defendant published false statements to a third party, discussed next.

### 2. Publication

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" <u>Taus v. Loftus</u>, 40 Cal.4th 683, 720 (2007) (quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782). "Defamation is effected either by libel or slander (§ 44), each of which is defined as a false and unprivileged publication (§§ 45,

United States District Court
Northern District of California

46).  Slander . . . is defined as an oral communication that '[t]ends directly to injure [a person] in respect to his [or her] office, profession, trade or business.'" <u>Noel v. River Hills Wilsons, Inc.</u>,113 Cal.App.4th 1363, 1368 (2003) (emphasis added).  "Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made."  <u>Ringler Assocs. Inc. v. Md. Cas. Co.</u>, 80 Cal.App.4th 1165, 1179 (2000) (citing <u>Cunningham v. Simpson</u>, 1 Cal.3d 301, 306 (1969)).

Here, plaintiff fails to establish a publication supporting libel or slander.  That is, she does not offer any admissible evidence that Marriott or its representatives communicated with potential employers about her.  As noted above, the only evidence that any of defendant's representatives conveyed anything about plaintiff to a third party comes from plaintiff's own inadmissible descriptions of hearsay in her deposition testimony.

In her opposition brief and at the hearing, plaintiff argued that DeFinney's testimony could not be relied upon given the inconsistencies and paperwork errors related to plaintiff's separation from Marriott. Dkt. 59 at 2.  The court does not consider the inconsistencies plaintiff attempts to highlight because credibility determinations are not part of the court's function on a summary judgment motion.  <u>T.W. Elec. Serv., Inc.</u>, 809 F.2d at 630.  And further, plaintiff's argument fails to identify any admissible evidence creating a genuine issue of material fact.  Plaintiff admits that she does not "have any knowledge of anything that [DeFinney] said about me," but she believes DeFinney made comments to potential employers because she was the general manager and she had access to personnel records.  Dkt. 55-4 at 70-71.  This inference is insufficient.  In contrast, defendant offers evidence that DeFinney did not speak to any hiring managers at other hotels about plaintiff's performance or the circumstances surrounding her separation from Marriott.  Dkt. 55-2 at 3; Dkt. 55-1 at 4-5, 12-15; <u>see also</u> Dkt. 55-3.  Based on this factual record, plaintiff fails to establish that Marriott or its staff published

1   any statements about her to any third parties.  Plaintiff, as the non-moving party, fails to

2   produce evidence rebutting defendants' showing, and an order for summary adjudication

3   in favor of defendant is proper.  <u>Nissan Fire</u>, 210 F.3d at 1103.

4   **III.     CONCLUSION**

5          For the reasons stated above, including that plaintiff's claim is time-barred and that

6   plaintiff fails to identify any statement published to a third party beyond her own

7   speculation or hearsay statements of unidentified persons, the court GRANTS

8   defendant's motion for summary judgment.

9          **IT IS SO ORDERED.**

10  Dated: December 9, 2021

11                                              _/s/ Phyllis J. Hamilton_____

12                                              PHYLLIS J. HAMILTON
                                                United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28